UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHAWN O.[1], | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 1:22cv186 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 12, 2015, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease ("COPD")/asthma, obesity, degenerative disc disease of the cervical and lumbar spine, history of pulmonary embolism and deep vein thrombosis ("DVT"), chronic pain syndrome, adjustment disorder, neurocognitive disorder, posttraumatic

        stress disorder ("PTSD"), and anxiety disorder/depression (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, crouch, and crawl, he can occasionally reach overhead with the bilateral upper extremities, he should avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and he should avoid all exposure to extreme heat, extreme cold, humidity, wet, slippery, or uneven surfaces, unprotected heights, and unguarded moving machinery. In addition, the claimant can understand, remember, and carry out simple instructions related to tangible and concrete tasks, he can make judgments on simple work related decisions, he can respond appropriately to occasional interactions with coworkers, supervisors and the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast paced production requirements such as that involved in assembly line type work activity, and with few, if any, changes in terms of work setting, tools and processes.

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.     The claimant was born on June 11, 1974 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7.     The claimant has at least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 12, 2015, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-34 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on November 18, 2022. On March 10, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 15, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded for an award of benefits.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

At the outset, this Court notes that Plaintiff has been pursuing his application for benefits for many years. Plaintiff has had no less than <u>three</u> hearings before an ALJ, due to remands at various levels. Enough is enough.

In support of remand, Plaintiff first argues that the ALJ's analysis of the medical opinions

4

was erroneous. Beatrice Lopez, NP, (Lopez) a nurse practitioner at Parkview who evaluated and treated Plaintiff between January 2016 (AR 1313-1318) and March 2021 (AR 1599-1604), provided a medical opinion in January 2017 (AR 1469-1471). Lopez indicated Plaintiff's diagnoses included COPD and shortness of breath on exertion, chronic neck pain, chronic right knee pain, chronic right foot pain, and history of pulmonary embolism with anticoagulation (AR 1469). Lopez reported Plaintiff's pain was worse with activity, and he became short of breath with exertion (AR 1470). He took Singular, Symbicort, Ventolin, and albuterol with a nebulizer every 6 hours or as needed for wheezing or shortness of breath (AR 1470). Lopez opined Plaintiff would need to take breaks due to his impairments and rest for 15 minutes about every 10-15 minutes due to his shortness of breath with minimal exertion (AR 1470). She estimated he would be "off task" 25% of a typical workday due to forgetfulness or short-term memory loss causing inattentiveness or poor concentration (AR 1470-1471). She also noted that factors exacerbating COPD including heat, cold, air pollutants, cologne, and chemicals in the air and that Plaintiff would likely miss more than four days a month due to shortness of breath associated with exacerbation to chemical exposure (AR 1471). Elizabeth Schowe, M.D., Plaintiff's primary care physician (PCP) (*e.g*., AR 1409, 1414, 1435, 1444-1445), also with Parkview, reviewed the opinion and signed indicating her agreement (AR 1472).

      The ALJ claimed the record did not "reflect any actual visits with Schowe" (AR 28-29). However, Dr. Schowe did evaluate and treat Plaintiff; on December 16, 2016, she administered a right knee injection due Plaintiff's worsening right knee degenerative joint disease (AR 1445); a "problem list" from a December 20, 2016, visit with Dr. Schowe included hypertension, bronchial asthma, panic disorder, asthma exacerbation, acute asthma exacerbation, anxiety and depression, pulmonary emphysema, phlebitis and thrombophlebitis of the leg, COPD, history of substance

5

abuse, allergic rhinitis, chronic neck pain, chronic pain syndrome, osteoarthritis of the spine with radiculopathy in the cervical region, right hip pain, right foot pain, shortness of breath, history of pulmonary embolism, and obstructive sleep apnea (1451-1452). Since Schowe was Plaintiff's PCP at Parkview, she would have access to the treatment notes of Lopez who examined and treated Plaintiff at Parkview. Plaintiff argues that the ALJ's failure to recognize Dr. Schowe as a treating source warrants remand because the ALJ failed to evaluate the opinion consistent with SSA's treating physician rules and the "controlling weight" provisions. 20 C.F.R. § 404.1527.

Plaintiff argues that even if the medical opinions was not entitled to controlling weight, the ALJ was required to apply the factors in 20 C.F.R. § 404.1527 in deciding what weight to afford the medical opinions from Lopez and Dr. Schowe. Plaintiff notes that in 2006 the Social Security Administration recognized that with the growth of managed health care, nurse practitioners have assumed a greater percentage of the treatment and evaluation functions previously handled by physician. SSA informed adjudicators that the opinions from a "medical source" who is not an "acceptable source," like Ms. Lopez, may, after applying the regulatory factors for evaluating opinion evidence, justify giving the opinion more weight than an acceptable medical source. Social Security Ruling 06-03p, 2006 SSR LEXIS 5.

In this case, it is clear that the ALJ failed to properly apply the regulatory factors in weighing the medical opinion evidence. The ALJ did not discuss length, nature, and extent of the treatment relationship, frequency of examination, the types of tests performed, and the consistency and supportability of the opinion. Lopez and/or Schowe had seen Plaintiff on five occasions prior to rendering the opinion. Plaintiff continued to have visits with Lopez and saw her at least ten more times after the she provided her opinion in January 2016. The treatment records are consistent with and support the opinions and demonstrate Plaintiff's persistent breathing problems with wheezing

6

and shortness of breath, and the need for multiple medications and intervention including use of regular nebulizer treatments, inhalers, prednisone, antibiotics, and even oxygen.

The ALJ failed to discuss how the other evidence, including February 2016 pulmonary function testing that SSA ordered, was consistent with the medical opinions. SSA's testing produced FEV1 values so low that Ostrander's COPD nearly meet listing 3.02 (Chronic Respiratory Disorders).

With respect to Plaintiff's mental limitations, Plaintiff points out that the ALJ selectively cited findings of "normal" memory and mood from appointments for Plaintiff's physical condition as a reason to discount the opinions (AR 29). However, Lopez was not performing a mental status exam or memory testing. Plaintiff also contends that the ALJ also engaged in unsupported speculation when she claimed the opinion was improperly based on Plaintiff's subjective reports (AR 29).

Plaintiff also correctly notes that the ALJ failed to address how the medical opinion of SSA's own examining psychologist, Dan Boen, Ph.D. is consistent with the opinions from Lopez and Dr. Schowe about Plaintiff's concentration deficits and "off-task" behavior. The December 2015 mental status exam and Wechsler (WMS-IV) memory testing that Dr. Boen administered are consistent with the medical opinions for Lopez and Schowe regarding "off task" behavior and concentration and memory problems, including auditory memory in the 1st percentile rank (AR 1083). Wechsler memory testing scores were in the very low range and his ability to listen to oral information, repeat it immediately, and recall it after a 20-to-30-minute delay was in the "extremely low range," and Dr. Boen observed concentration was significantly below normal (AR 1077, 1080-1086). Dr. Boen opined Plaintiff could understand what he was asked to do on a job but could not remember what he was asked to do, would not be able to concentrate on the job, and

7

would not be able to stay on task. (AR 1079).

Additionally, it is clear that the ALJ also improperly discounted and failed to discuss how the medical opinion evidence and formal memory testing from SSA's own psychologist was consistent with the opinions of Lopez and Dr. Schowe. The ALJ erred in given Dr. Boen's opinion "no weight" (AR 31). The Seventh Circuit recognizes "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled… can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

The ALJ recited some of the results of the formal memory testing but offered no valid, substantiated grounds for discounting the testing results and Dr. Boen's opinion (AR 31) The ALJ acknowledged that neurocognitive disorder was a severe impairment (AR 18). In fact, Dr. Boen, diagnosed a "major neurocognitive disorder" after performing memory testing (AR 1077). Incredulously, the ALJ held that reports of playing cards on the computer and a notation in a record that Plaintiff did "small engine and car repair" were inconsistent with Dr. Boen's testing. However, the ALJ failed to obtain sufficient detail about the activities to show any inconsistency and failed to confront the contradictory testimony from Plaintiff's mother. Mother testified Plaintiff used to work on small engines like the weed eater and kids' go carts; Plaintiff thought he knew how to fix these things but did not, and his dad was there with him having to "fix the mess" (AR 234). Mother also testified Plaintiff used to play poker, but he did not remember how to play and "argues with a little kid who's eight" because he thinks he has won with two pairs over a full house (AR 236). The ALJ misconstrued the record and played doctor in claiming these activities undermined Dr. Boen's opinion. *See, e.g., Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (ALJ was impermissibly "playing doctor" by concluding that claimant's ability to use sarcasm invalidated her

8

low IQ test score).

Moreover, SSA's own non-examining state agency medical consultants opined that Plaintiff's symptoms included not only pain and fatigue but also sustained concentration and persistence limitations and that they were substantiated by the medical evidence alone (AR 288). DDB non examining psychologist, Randal Horton, Psy.D. assessed moderate limitation in the ability to maintain concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances which is consistent with the opinions from Dr. Boen as well as the opinion from nurse Lopez and Dr. Schowe (AR 292).

This Court agrees with Plaintiff that once the opinions from nurse Lopez/Dr. Schowe and Dr. Boen are afforded the weight they deserve under 20 C.F.R. 404.1527, an award of benefits is supported. The state agency medical consultants' opinions in this case are not substantial evidence to reject the opinions. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (noting that the opinion of a non-examining state agency medical consultant does not by itself suffice as substantial evidence to reject the opinion of an examining physician). Moreover, the state agency evaluators did not address the amount of time Plaintiff would be absent or off task. The opinions that Plaintiff would be need breaks of 10-15 minutes every 15 minutes, would be "off task" 25% or more of the time, and would likely be absent four days a month or more support disability based on the testimony from three different vocational experts during the three hearings before the ALJ.

The medical evidence and opinions also indicate that Plaintiff needs to use a nebulizer every six hours and sometimes more (AR 1470). In December 2015, Dr. Overdahl recommended using the nebulizer every four hours (AR 1119). In May 2020, nurse Lopez indicated Plaintiff was using his inhalers and nebulizer every four hours, and in July 2020 sometimes he was using oxygen during the day (AR 1498-1514). Plaintiff testified he used a nebulizer four times a day and it took

9

15 to 20 minutes (AR 55-7, 150-151, 209-210). Plaintiff's mother reported in December 2015 he used the nebulizer 4 to 5 times daily, and she testified at the 2017 he used the nebulizer and oxygen (AR 238, 698). All three VEs agreed that use of a nebulizer in the workplace would be considered a workplace accommodation (AR 91-92, 177, 247). When SSA determines whether an individual is disabled, SSA does not take the possibility of "reasonable accommodation" into account. SSR 00-lc; *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999), citing Memorandum from Daniel L. Skoler, Assoc. Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges (June 2, 1993), reprinted in 2 Social Security Practice Guide (1997). Thus, SSA must determine whether Plaintiff could perform other work without an accommodation, and if not, a finding of disability is supported. The ALJ failed to make such a determination in this case.

    For all of the foregoing reasons, the decision of the Commissioner will be reversed and remanded for an award of benefits.

## Conclusion

    On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for an AWARD OF BENEFITS. The Commissioner shall instruct the agency to promptly calculate the benefits owed to Plaintiff and begin making the payments to which he is entitled by law.

Entered: May 18, 2023.

                                       s/ William C. Lee
                                       William C. Lee, Judge
                                       United States District Court